UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| GAVIN MACGREGOR,<br><br>    Plaintiff,<br><br>vs.<br><br>MIMEDX GROUP, INC.,<br><br>    Defendant. | No. 1:19-cv-01189-PJK-GJF |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the court on Defendant MiMedx Group, Inc.'s (MiMedx's) Motion for Summary Judgment filed January 29, 2021 (ECF No. 63) and Plaintiff Gavin MacGregor's Motion for Partial Summary Judgment filed January 29, 2021 (ECF No. 64).[1] Having reviewed the parties' submissions and the relevant law, the court will deny Defendant's Motion for Summary Judgment and will grant in part and deny in part Plaintiff's Motion for Partial Summary Judgment.

**Background**

This case primarily concerns Mr. MacGregor's hiring by Defendant MiMedx. Except as otherwise indicated, the following facts are undisputed. MiMedx is a

---

[1] The case was transferred to the undersigned on April 27, 2021. ECF No. 81.

biopharmaceutical company that sells wound care products. In June 2019, Mr. MacGregor began interviewing for an account executive position within MiMedx's sales department. MiMedx was seeking to fill a position left vacant after the resignation of account executive Sara Kaplan. The position primarily involved selling a MiMedx product called "EpiFix."

Mr. MacGregor had a series of interviews with Regional Sales Manager, Todd Serrano and National Director of Sales, Training and Development, William Lenz. During the interviews, Mr. MacGregor, Mr. Serrano, and Mr. Lenz discussed Mr. MacGregor's qualifications for the position, as well as compensation under MiMedx's base salary plus commission plan. Under the plan, Mr. MacGregor would be paid a base salary of $95,000 per year and would earn an initial commission of ten percent of sales. After a number of months, the commission would be ten percent of sales over $20,000 per month. Mr. Serrano and Mr. Lenz identified the University of New Mexico Hospital (UNMH), as an existing account Mr. MacGregor would take over if hired. UNMH was Ms. Kaplan's most profitable account in 2018 and 2019. Mr. MacGregor alleges that Mr. Serrano and Mr. Lenz also identified other accounts he would take over if hired and that they showed him the UNMH sales history for the prior four quarters (April 1, 2018 through March 31, 2019) during one of his interviews. During that period, MiMedx's sales to UNMH exceeded $1,500,000 — over $100,000 each month, on average.

At the time of Mr. MacGregor's interviews, however, MiMedx's sales to UNMH had dropped significantly. MiMedx's May 2019 sales to UNMH were just over $11,000

and MiMedx made no sales to UNMH in June 2019.  Mr. Lenz and Mr. Serrano were aware of these sales figures at the time of Mr. MacGregor's interview but did not share them with Mr. MacGregor on the basis that the figures were confidential.

Mr. MacGregor was offered the position on June 24, 2019.  He accepted the position the following day.  His offer letter and MiMedx's policies brochure both stated that they replaced and superseded any prior representations made by MiMedx.  Mr. MacGregor started at MiMedx on July 8, 2019.

Approximately two months later, Mr. MacGregor visited UNMH with Mr. Serrano.  They met with a charge nurse who told them about reimbursement issues UNMH had experienced with EpiFix.  After hearing this, Mr. MacGregor became upset over what he considered MiMedx's mismanagement of the UNMH account.  Following the meetings, Mr. MacGregor and Mr. Serrano had a heated discussion in which Mr. MacGregor expressed dissatisfaction with the company's management of the UNMH account and with the impression of the account he was given during his interview and onboarding process.  The next day, Mr. MacGregor called a colleague to discuss the meeting and his conversation with Mr. Serrano.  He shared his frustrations regarding the UNMH account and told the colleague that he felt like punching Mr. Serrano in the face during their conversation at UNMH.  The colleague reported this statement to Mr. Serrano.  Mr. Serrano informed Mr. Lenz, who reported the statement to MiMedx's HR department.  HR investigated the incident and substantiated the allegations.  MiMedx terminated Mr. MacGregor's employment on September 16, 2019.

In December 2019, Mr. MacGregor filed an action in New Mexico state court, alleging intentional and negligent misrepresentation, prima facie tort, retaliatory discharge, and a variety of contractual claims against MiMedx. MiMedx removed the action to this court, where the parties stipulated to the dismissal of all but the intentional and negligent misrepresentation claims. ECF No. 60.

Both parties now move for summary judgment. MiMedx seeks summary judgment on Mr. MacGregor's remaining claims. It identifies six reasons why Mr. MacGregor's misrepresentation claims fail as a matter of law: (1) MiMedx was under no duty to disclose confidential sales figures during Mr. MacGregor's interview; (2) the alleged misrepresentations related to predictions of future events rather than facts; (3) Mr. MacGregor could not have reasonably relied on the representations; (4) MiMedx provided Mr. MacGregor with all information material to his decision to take the job; (5) Mr. MacGregor's offer letter and acknowledgment of MiMedx's policies prohibit reliance on representations not contained in those documents; and (6) Mr. MacGregor's claims are barred by the New Mexico Worker's Compensation Act. MiMedx also argues that there is no evidence that MiMedx acted with an intent to deceive Mr. MacGregor.

Mr. MacGregor seeks partial summary judgment solely on the issue of MiMedx's liability for intentional and/or negligent misrepresentation based on its failure to inform him of the May and June 2019 UNMH sales figures during his interviews.

**Discussion**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). Once the movant has met this burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court views the evidence in the light most favorable to the nonmovant. See SEC v. Thompson, 732 F.3d 1151, 1156–57 (10th Cir. 2013). In ruling on a summary judgment motion, the court may decline to grant all the relief requested and instead enter an order identifying material facts not genuinely in dispute. Fed R. Civ. P. 56(g). Those facts are treated as established in the case. Id.

**A. Negligent Misrepresentation**

Negligent misrepresentation requires (1) a materially misleading statement, (2) that the speaker had no reasonable ground for believing was true, (3) on which the speaker intends the listener to rely, (4) on which the listener justifiably did rely, and (5) the listener suffered harm as a result of his reliance. Saylor v. Valles, 63 P.3d 1152, 1158 (N.M. Ct. App. 2002); Eckhardt v. Charter Hosp. of Albuquerque, Inc., 953 P.2d 722, 733–34 (N.M. Ct. App. 1997). "In New Mexico, misrepresentation can be by either commission or omission." Encinias v. Whitener Law Firm, P.A., 310 P.3d 611, 619 (N.M. 2013) (quotation omitted).

To be liable for negligent misrepresentation, the defendant must have breached a

duty of disclosure owed to the plaintiff. Ruiz v. Garcia, 850 P.2d 972, 977 (N.M. 1993). Whether a duty of disclosure exists is a question of law for a court to decide. R.A. Peck, Inc. v. Liberty Fed. Sav. Bank, 766 P.2d 928, 932 (N.M. Ct. App. 1988).

Mr. MacGregor contends that it is undisputed that MiMedx discussed the UNMH sales history from April 1, 2018 to March 31, 2019 with him during his interview. He points to paragraph 6 of MiMedx's answer, in which it stated "Defendant admits it identified [UNMH] as an existing account that Plaintiff would be assigned if he was hired, and discussed with Plaintiff the UNMH sales history for the last four quarters." ECF No. 5 at 2. MiMedx responds that it has presented evidence showing a dispute as to whether specific sales history was discussed with Mr. MacGregor, including Mr. Serrano and Mr. Lenz's deposition testimony stating that they did not share sales history for any account. ECF No. 72 at 8. However, admissions in an answer are binding, even if the admitting party later claims the existence of a factual dispute based on evidence produced at summary judgment. Grynberg v. Bar S Servs., Inc., 527 F. App'x 736, 739 (10th Cir. 2013) (unpublished) (citing Missouri Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1314 (8th Cir. 1990)). MiMedx is bound by the admission in its answer. There is therefore no factual dispute as to whether MiMedx discussed with Mr. MacGregor the UNMH sales history for the four quarters prior to his interview.

Given that established fact, the court next considers whether MiMedx's sharing of that information triggered a duty to disclose the recent dramatic drop in UNMH sales.

While a duty of disclosure typically arises as the result of a special relationship

between the parties, see R.A. Peck, 766 P.2d at 933, it can also arise based on the context in which a statement is made. Under New Mexico law, a party to a business transaction is under a duty to disclose all material facts basic to the transaction if he knows the other party is mistaken as to those facts and, based on objective circumstances, would reasonably expect disclosure of those facts. Azar v. Prudential Ins. Co. of Am., 68 P.3d 909, 928 (N.M. Ct. App. 2003). Moreover, "[t]o reveal some information on a subject triggers the duty to reveal all known material facts." Wirth v. Commercial Res., Inc., 630 P.2d 292, 297 (N.M. Ct. App. 1981).

Here, the parties were discussing a potential business transaction, i.e., an employment relationship. While that context alone does not trigger a blanket duty to disclose sales figures relevant to compensation, MiMedx took the additional step of affirmatively sharing some recent UNMH sales figures during the interview. And it is undisputed that, at the time they showed Mr. MacGregor the figures, Mr. Lenz and Mr. Serrano were aware that the May and June 2019 sales figures were dramatically lower than those shown to Mr. MacGregor. Serrano Depo. at 43:8–44:5 (ECF No. 63, Ex. 4); Lenz Depo. 68:12–69:15 (ECF No. 63, Ex. 5). Having revealed some information on this subject with the knowledge that the information was incomplete, MiMedx was under a duty to share all known facts necessary to make its statements not misleading. See Azar, 68 P.3d at 928; Wirth, 630 P.2d at 297.

Whether a statement is materially misleading is ordinarily a question of fact to be decided by a jury. See Azar, 68 P.3d at 932. However, under some circumstances, a

statement can be materially misleading as a matter of law. Here, it is undisputed that MiMedx informed Mr. MacGregor he would receive the UNMH account and showed him sales figures from April 1, 2018 to March 31, 2019 in which MiMedx averaged over $100,000 in sales to UNMH each month. In the same discussion, it failed to disclose known, more recent sales figures at least 90% lower than those shown to Mr. MacGregor. It is also undisputed that the omission was made during an interview process in which the parties discussed that Mr. MacGregor's compensation would include a ten percent commission on sales. This omission is plainly material. A reasonable person in Mr. MacGregor's position "would attach importance to" dramatically lower sales figures affecting compensation in evaluating a job offer and MiMedx had reason to know that Mr. MacGregor was "likely to regard the matter as important." See id. at 930 (quoting Restatement (Second) of Torts § 538(2)(a)(b)). The omission of the May and June 2019 UNMH sales figures therefore rendered MiMedx's statements materially misleading as a matter of law.

MiMedx contends that its statements cannot be misleading because they involved predictions rather than statements of historical fact. However, it is undisputed that at the time of the interview Mr. Lenz and Mr. Serrano knew the May and June 2019 sales figures because they received daily sales reports. Serrano Depo. at 43:8–44:5 (ECF No. 63, Ex. 4); Lenz Depo. at 68:23–25 (ECF No. 63, Ex. 5). Existing sales figures are historical facts, not future projections. And to the extent statements can be viewed as predictions regarding future sales or Mr. MacGregor's ability to earn future commissions,

- 8 -

such statements are actionable when they are "based on a concealment of known facts" or are unsupported by known facts at the time the statements were made. Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd., 820 P.2d 1323, 1326 (N.M. 1991) (quotation omitted).

As to reliance, New Mexico law "impose[s] a presumption of reliance where a defendant makes materially misleading omissions." Berry v. Fed. Kemper Life Assurance Co., 99 P.3d 1166, 1186 (N.M. Ct. App. 2004). Accordingly, reliance may be presumed "where it is logical to believe that a reasonable person . . . would attach importance to the omitted fact in his choice of action on the transaction in question." Id. MiMedx does not dispute that it intended that Mr. MacGregor would be able to rely upon the truth and accuracy of the information it provided during the interview. Lenz. Depo. at 54:19–55:1–11 (ECF No. 63, Ex. 5). However, it argues that the presumption of actual reliance does not apply here because Mr. MacGregor reached out to his contacts in the local medical community, including UNMH, and was informed that the chief of the plastic surgery unit was under "pressure to reduce costs in his department" and had experienced "possible reimbursement issues" with EpiFix. MacGregor Depo. 254:14–256:20 (ECF No. 63, Ex. 2). Mr. MacGregor argues in response that he raised these concerns before accepting the position and was informed that it was not a major issue. MacGregor Depo. at 235 (ECF No. 63, Ex. 2); Serrano Depo. at 163 (ECF No. 63, Ex. 4).

Where a statement's recipient has no "reason to know of facts making reliance unreasonable," the fact that he investigates the statement's truth will not relieve the

speaker from liability. Lotspeich v. Golden Oil Co., 961 P.2d 790, 794 (N.M. Ct. App. 1998). However, whether the recipient relied upon the statement or his own investigation is a question of fact for the jury to decide unless the undisputed facts show the absence of a genuine dispute as to reliance. See id. Here, the undisputed facts provide strong support for a presumption that Mr. MacGregor relied on MiMedx's statements. MiMedx shared sales figures for the UNMH account during interviews in which it also discussed MiMedx's commission structure. And it responded to Mr. MacGregor's questions about potential sales issues at UNMH by stating that there were no serious problems. However, it is also undisputed that Mr. MacGregor undertook at least some investigation of the statements by speaking to contacts at UNMH. A reasonable person logically would attach importance to sales figures affecting compensation in deciding whether to accept a job offer. See Berry, 99 P.3d at 1186. Still, out of an abundance of caution, the court finds that it is not entirely undisputed whether Mr. MacGregor relied on MiMedx's representations or his own investigation. The court therefore denies summary judgment as to reliance.

Neither party fully addresses the final element, whether Mr. MacGregor suffered harm as a result of the misrepresentation,[2] in their summary judgment filings. Mr.

---

[2] Some New Mexico courts do not list harm as an element of a negligent misrepresentation claim. See, e.g., Saylor, 63 P.3d at 1158. New Mexico courts are clear, however, that "[p]rinciples of negligence govern the law of negligent misrepresentation." Id. And it is well established that harm is a necessary element of a negligence claim. Bhandari v. VHA Sw. Cmty. Health Corp., No. CIV 09-0932

Continued . . .
- 10 -

MacGregor's partial summary judgment motion suggests that his theory of harm is based on his decision to leave his prior job, where he earned $178,000 per year, to accept employment with MiMedx. ECF No. 64 at 9. Because the record is not adequately developed on this point, the court denies summary judgment as to harm as well.[3]

### B. Intentional Misrepresentation

An intentional or fraudulent misrepresentation claim requires (1) a misrepresentation of fact made intentionally or with reckless disregard for the truth; (2) intent to deceive and to induce the injured party to act upon the misrepresentation; and (3) actual and detrimental reliance. Bull v. BGK Holdings, LLC, 859 F. Supp. 2d 1238, 1247 (D.N.M. 2012) (citing Saylor, 63 P.3d at 1158). Intentional misrepresentation claims based on omissions also require that the defendant be under a duty to disclose. Oliver v. Meow Wolf, Inc., No. CV 20-237 KK/SCY, 2020 WL 6939875, at *16 (D.N.M. Nov. 25, 2020). Damages are not an element of intentional misrepresentation. Encinias, 310 P.3d at 620.

For the reasons discussed above, the court grants summary judgment as to the duty and intentional misrepresentation elements. MiMedx's disclosure of some recent sales figures triggered a duty to disclose the more recent, dramatically lower figures. Its failure

---

JB/GBW, 2011 WL 1336512, at *16 (D.N.M. Mar. 30, 2011); see also Ruiz, 850 P.2d at 977.

[3] The element of harm in a negligence action is distinct from the issue of damages. See Lovelace Med. Ctr. v. Mendez, 805 P.2d 603, 609 (N.M. 1991). Therefore, although Mr. MacGregor's compensable damages may be reduced as a result of his firing, that issue is separate from the question of MiMedx's liability for misrepresentation.

to do so was misleading as a matter of law. And it is undisputed that MiMedx knew of the lower figures at the time of the omission, making the omission at least reckless as to the truth of its statements. See Bull, 859 F. Supp. 2d at 1247. For the reasons discussed above, the court denies summary judgment as to reliance.

The court further finds that there exists a genuine factual dispute as to whether MiMedx intended to deceive Mr. MacGregor in omitting the May and June 2019 sales figures. The only evidence Mr. MacGregor points to showing that MiMedx intended to deceive him and to induce reliance is the fact that it knowingly omitted the May and June 2019 sales figures while affirmatively sharing the earlier figures. ECF No. 64 at 8; ECF No.74 at 7–8. That fact creates a factual dispute as to MiMedx's intent to deceive but is insufficient to establish MiMedx's intent as a matter of law. The court therefore denies summary judgment as to the intent and inducement element as well.

### C.  MiMedx's Remaining Arguments

For the reasons discussed above, the court rejects the following arguments by MiMedx in support of summary judgment: (1) MiMedx had no duty to disclose the May and June 2019 sales figures; (2) the alleged misrepresentations did not relate to facts, but rather to unactionable predictions of future events; and (3) MiMedx told Mr. MacGregor about the information he claims would have affected his decision to take the job. The court now considers MiMedx's remaining arguments for summary judgment in its favor.

First, MiMedx argues that Mr. MacGregor could not reasonably rely on oral representations made during his interview because he had received contradictory written

representations.  However, MiMedx does not identify any written representations provided to Mr. MacGregor prior to his acceptance of the job that conflicted with the representations made during his interview.  MiMedx's citation to Rohr v. Allstate Fin. Servs., 529 F. App'x. 936 (10th Cir. 2013) is therefore inapposite.  This argument is unavailing.

MiMedx also seems to suggest that Mr. MacGregor could not reasonably rely on the representations regarding the UNMH sales figures because he failed to adequately investigate the statements.  First, a plaintiff is obligated to investigate a representation only when he "has reason to know of facts making reliance unreasonable" or where the representation is obviously false.  Lotspeich, 961 P.2d at 794.  MiMedx does not identify facts making reliance unreasonable nor does it contend that the representations were obviously false.  Further, MiMedx argues elsewhere that Mr. MacGregor did investigate the representations.  ECF No. 72 at 6–7.  The court rejects this argument as well.

MiMedx next argues that it is entitled to summary judgment because Mr. MacGregor's offer letter and acknowledgment of MiMedx's policies prohibit reliance on unwritten representations.  Under New Mexico law, exculpatory clauses disclaiming representations made prior to the formation of a contract do not preclude liability for claims based on affirmative or fraudulent misrepresentation.  W. States Mech. Contractors, Inc. v. Sandia Corp., 798 P.2d 1062, 1065 (N.M. Ct. App. 1990).  However, New Mexico law is less clear as to whether this rule applies to claims based on negligent misrepresentation or misrepresentations premised on omissions.

In Golden Cone, the New Mexico Supreme Court suggested that it does. The court considered whether the plaintiff should have been barred from proceeding on fraud, negligent misrepresentation, and constructive fraud claims in light of an exculpatory clause substantively the same as the one at issue here. See Golden Cone, 820 P.2d at 1325. The court concluded that the district court did not err in permitting the plaintiff to proceed, noting that "in New Mexico exculpatory clauses do not preclude liability." Id. However, the court also quoted case law that appears to limit that rule's application to claims for rescission of contract or damages based on fraud or deceit, rather than negligence. See id. at 1325–26. In addition, the court noted that the district court permitted the claims to proceed after Golden Cone had elected to pursue rescission as a remedy, rather than damages based on its misrepresentation claims. Id. at 1326.

However, the court also held that the rescission claim properly could be based on the defendant's omission of material facts and upheld the district court's award of punitive damages based in part on a finding of negligent misrepresentation. See id. at 1326–27. Golden Cone offers no basis for concluding the court would have found that the plaintiff's misrepresentation claims were barred had the plaintiff elected to pursue damages rather than rescission. This court therefore finds that, under New Mexico law, the exculpatory clauses in the offer letter and MiMedx's employee policies do not bar Mr. MacGregor's negligent or intentional misrepresentation claims.

MiMedx also argues that Mr. MacGregor's negligence claim is barred by the New Mexico Workers Compensation Act (WCA). This argument lacks merit. First, the WCA

- 14 -

applies only to claims arising out of personal injury or death. N.M. Stat. Ann. § 52-1-9. This does not include claims regarding "economic expectancies." See Coleman v. Eddy Potash, Inc., 905 P.2d 185, 193 (N.M. 1995), overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc., 34 P.3d 1148, 1155 (N.M. 2001). Moreover, the WCA applies only to injuries that occur during the employment relationship. See Coates v. Wal-Mart Stores, Inc., 976 P.2d 999, 1005 (N.M. 1999) (holding that the WCA only covers accidental injuries that occur in the workplace). Here, the conduct giving rise to the misrepresentation claims took place before Mr. MacGregor was employed by MiMedx. Accordingly, the WCA does not apply.

Finally, the court notes that Mr. MacGregor seeks partial summary judgment only on his misrepresentation claims based on MiMedx's failure to disclose the May and June 2019 UNMH sales figures. As discussed above, the court will grant in part and deny in part Mr. MacGregor's motion. MiMedx, however, seeks summary judgment on all Mr. MacGregor's claims, including those based on alleged misrepresentations or omissions other than those relating to the UNMH sales figures. See ECF No. 63 at 9–10. With respect to those claims, the court finds that genuine disputes of fact exist as to whether those statements were made and the content of the statements, in addition to the disputes as to reliance, intent, and harm described above. See ECF No. 71 at 9–10; ECF No. 76 at 4–5. The court therefore denies MiMedx's motion for summary judgment with respect to the misrepresentation claims based on statements other than those relating to the UNMH sales figures.

NOW, THEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment filed January 29, 2021 (ECF No. 63) is denied.  Plaintiff's Motion for Partial Summary Judgment filed January 29, 2021 (ECF No. 64) is granted in part and denied in part.

DATED this <u>18th</u> day of May 2021 at Santa Fe, New Mexico.

<u>/s/ Paul Kelly, Jr.</u>
United States Circuit Judge
Sitting by Designation

Counsel:

Sarah O'Keefe and Robert Shawn Oller, Littler Mendelson, P.C., Phoenix, Arizona, for Defendant.

Floyd D. Wilson, Floyd D. Wilson, P.C., Cedar Crest, New Mexico, for Plaintiff.